## JOE TUTTLE v. THE STATE.

### No. 1727. Decided June 21, 1899.

#### 1. Swindling—Allegation and Proof—Variance.

On a trial of an accomplice to swindling, where the indictment alleged that the matters constituting the swindle took place between the principals of the defendant and one Shands, vice-president of the R. P. R. Co.; and that the goods, etc., were parted with by Shands on account of the false representations constituting the swindle, Held, the simple fact that, after the trade was made, a clerk, at the instance and request and under the dictation and orders of Shands and not Shands himself in person, separated and delivered the goods to the swindlers, did not constitute any variance between allegation and proof.

#### 2. Charge of Court.

A charge of court is not injurious or prejudicial to defendant which only imposes an additional burden of proof upon the State.

#### 3. Requested Instructions.

It is not error to refuse requested instructions already embodied in the charge given.

#### 4. Admission of Evidence—Bill of Exceptions.

. Error assigned upon the admission of proof of defendant's confessions will not be considered where no bill of exceptions was reserved in the trial court.

APPEAL from the District Court of Kaufman. Tried below before Hon. J. E. DILLARD.

Appeal from a conviction as an accomplice to swindling; penalty, two years imprisonment in the penitentiary.

The two Singletons, who were the principals in the swindle, and Tuttle, this defendant, who was charged as an accomplice to the swindle, were in the employment of Sam Roberson in Rockwall County, cutting cordwood. Roberson sent a team of mules and a wagon to Tuttle to their camp. The Singletons went to Forney, in Kaufman County, and there they represented themselves as the owners of the mules and wagon, and, upon the faith of the same, purchased goods to the value of some $60 from one Shands, vice-president of a mercantile firm doing business under the firm name and style of R. P. Rhea & Co. To secure the payment of the goods they executed a mortgage upon the mules and also upon their interest in a planted crop of cotton and corn upon the farm of one Hardin, of Rockwall County, they having no interest in any such crops. After they had succeeded in acquiring the goods, as aforesaid, they returned and settled with Roberson for the work they had done for him, and all three left the county. When it was ascertained that they had perpetrated the swindle, they were pursued and captured in another county, and this defendant Tuttle was in possession of some of the clothing the Singletons had gotten from R. P. Rhea & Co., as aforesaid, at Forney. In bringing them back to Forney, as prisoners, defendant confessed, after having been warned, to the officers having them in charge, that he had advised, instigated, and planned the swindle as the same had been carried out by the Singletons.

*Ed. R. Bumpass, W. P. Williams,* and *William H. Allen,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING · JUDGE.—Appellant was convicted as an accomplice to the crime of swindling,—the principals being T. J. and N. Singleton,—and his punishment assessed at confinement in the penitentiary for a term of two years, and he appeals.

The indictment alleges the dealings in the matter of transferring the property from the R. P. Rhea Company occurred between the vice-president, N. E. Shands, and the principals, T. J. and N. Singleton. On the trial the State, over appellant's objection, was permitted to prove by Shands and Monger that Monger in fact sold the goods to the Singletons. Shands and Monger testified that the trade was made between Shands and the Singletons, and that all the transactions leading up to the actual separation of the goods, and the delivery of same to the Singletons, occurred between Shands and the Singletons; that Monger was the clerk in the house; that Shands was in charge of the house, and, after the trade was consummated with the Singletons, he selected Monger as the clerk to make the segregation and delivery of the goods to the Singletons. The fact that Monger actually separated and delivered the goods does not constitute a variance between the allegation in the indictment and the proof on this question. Monger was but the servant of Shands in the matter, and he acted under his immediate dictation and orders in delivering the goods.

It is contended the court committed error in submitting the insolvency of the Singletons in his charge. This was very favorable to defendant. While there is no direct testimony as ·to the insolvency of the Singletons, and, so far as the matter is concerned, we may concede that there is no evidence on the question at all, yet this charge was favorable to appellant, because it authorized the jury to find they were insolvent, before they could convict appellant for advising them to commit the crime charged. In other words, this ·was a burden upon the State, and could not operate prejudicially to appellant. It was in no manner calculated to injure any of his rights. The court fully instructed the jury with regard to the law of the case, and he especially cautioned them that, before they could convict appellant of being an accomplice, they must find from the evidence that he advised the Singletons to the commission of the offense before they obtained the goods. Hence there was no error in refusing the special requested charge. And in this connection the court, not only in the general charge, but in a special charge requested by appellant, gave this phase of the law to the jury.

Appellant's contention on motion for new trial that the court erred

41st Crim. Rep.—7

.in permitting Williams to testify to appellant's· confessions will not be noticed, because a bill of exceptions was not reserved. Nor is there any merit in the contention that the evidence is insufficient to support the judgment. The circumstances, we think, are cogent, and they are supplemented by the confession of appellant. The judgment is affirmed.

*Affirmed.*